No. 83-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

GALLATIN VALLEY MEDICAL DENTAL CENTER, INC.,
a Mont. Corp.,

Plaintiff and Respondent,

-vs-

MICHAEL J. LEMLEY,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joseph E. Mudd, Bridger, Montana

For Respondent:

Douglas R. Drysdale, Bozeman, Montana

---

Submitted on Briefs: July 21, 1983

Decided: October 6, 1983

Filed: OCT 6 - 1983

*Ethel M. Harrison*

---
Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

Defendant, Michael J. Lemley, appeals from a judgment of the Eighteenth Judicial District Court awarding plaintiff, Gallatin Valley Medical-Dental Center, Inc. $4,340.25 in rent. We affirm.

The parties entered into a five year lease for a space in a building known as Gallatin Valley Medical-Dental Center in Bozeman, Montana. Appellant agreed to pay a total of $11,571 during the first two years of the lease in equal installments of $482.25 per month commencing on July 1, 1979. By the terms of the lease, the premises was to be used as a pharmacy and could not be sublet without the written consent of the respondent.

In August, 1979, without any notice to respondent, appellant sold his pharmacy business to Donald A. and Hazel Angle. The Angles added their signatures to the original lease and paid the respondent rent until September 1, 1980 when they vacated and abandoned the premises.

On September 24, 1980 the respondent wrote a letter to appellant advising him that he was in default and the lease was terminated, but that all rights and remedies contained in the lease were reserved.

The respondent eventually relet the premises on July 1, 1981 for $300 per month.

Respondent commenced this action on June 12, 1981 claiming appellant owed him $4,340.25 in lost rent. The complaint alleged that appellant had violated the terms of the lease by not paying $482.25 per month from October 1, 1980 to the date of the complaint. In his answer, appellant

admitted owing the respondent $4,340.25 but asserted he had been released from his obligations under the lease because respondent had terminated the lease and accepted rent from the Angles.

The District Court held that respondent's letter of September 24, 1980 did not terminate appellant's liability and appellant owed respondent $4,340.25 pursuant to the terms of the lease.

Appellant now contends the District Court erred in awarding respondent the lost rent. Specifically, appellant asserts that respondent's letter of September 24, 1980, read in conjunction with the lease, indicates that any liability for rent was terminated by the language of the letter. Moreover, appellant asserts that the lease must be construed against the respondent because Section 28-3-206, MCA provides that an ambiguous contract must be interpreted most strongly against the party who caused the uncertainty to exsist.

We affirm the judgment of the District Court.

Initially, we note that the record does not indicate that respondent prepared the lease. Thus, the agreement cannot be construed against respondent pursuant to Section 28-3-206, MCA.

In this dispute, the applicable portion of the lease is section 7, which, in pertinent part, provides:

> "If the leased property shall be deserted or vacated,. . .
>
> "or there shall be a default in the payment of any rent or any part thereof, for more than fifteen (15) days . . .
>
> " after written notice of such default by the Landlord, Tenant's rights in this lease . . .

" shall thereupon terminate and end, and the Landlord shall have the right to enter or reposses the leased property . .

"Landlord may likewise . . .

"and in addition to any other remedies which Landlord may have upon default, let and re-let said premises in whole or in part . . .

"and Tenant shall be liable unto Landlord for any deficiency between the remaining upaid rental and the rental so procured by the Landlord for the period of said letting or re-letting and shall further be liable for costs of re-letting . . .

"and Landlord may institute action for the whole of such deficiency immediately upon effecting a letting or re-letting and shall not thereafter be precluded from further like action in the event that such letting or re-letting shall not embrace the whole unexpired portion of the term hereof. . .

"If the Landlord shall give the notice of termination as herein provided, then at the expiration of such period, this Lease shall terminate as completely as that were the date herein definitely fixed for the expiration of the term of this lease, and Tenant shall then surrender the leased property to Landlord. . .

"the notice hereinbefore provided is only for the purpose of creating conditional limitation hereunder pursuant to which this lease shall terminate."

The appellant argues that respondent's letter of September 24, 1980 triggered that portion of section 7 which provides: "If the Landlord shall give the notice of termination as herein provided, then at the expiration of such period, this Lease shall terminate as completely as that were the date herein definitely fixed for the expiration of the terms of this lease. . ." In making this argument, appellant points to the fifth paragraph of the letter of September 24, 1980 which states, "Therefore, the

-4-

Landlord does elect without further notice to terminate the lease bearing the date of June 22, 1979, and referred to above, reserving to itself all other rights and remedies contained in the said lease in the event of default." Thus, appellant asserts the obligation to pay rent was terminated by the letter.

The letter of September 24, 1980, taken in its entirety, did not end appellant's obligation to pay rent. The respondent's letter did terminate the lease so far as appellant's rights were concerned, but the remedial options of the lease were reserved. The portion of the letter appellant relies upon clearly states that although appellant's lease was being terminated, respondent was "reserving to itself all other rights and remedies contained in the said lease in the event of default." This is a clear indication that provisions of the lease, including the right to collect lost rent, were being reserved. In addition, it should have been evident to the appellant that the letter of September 24, 1980 was not solely a termination of appellant's rights under the lease. The third paragraph of the letter states: "This is intended as the specific fifteen-day notice of _default_ and non-payment called for in your lease" (emphasis added). Thus, the language of the letter expressly indicated that because appellant was in default, respondent was terminating his rights and reserving remedies under the lease.

Section 7 of the lease provides that in the event of default ". . .Tenant's rights in this lease (if the Landlord so elects and such election is reserved). . . shall thereupon terminate and end, and the Landlord shall have the

-5-

right to enter or repossess the leased property. . ." The lease further provides, "Landlord may. . . at Landlord's option, and in addition to any other remedies which Landlord may have upon default, let and relet said premises. . . and the Tenant shall be liable unto Landlord for any deficiency between the remaining unpaid rentals and the rentals so procured. . . "

Thus, the respondent had the right to terminate appellant's rights in the lease, in order to let or relet, and still hold the appellant liable for rent.

Finally, appellant argues that respondent's remedies were exclusive, i.e., respondent could not terminate appellant's rights in the lease and relet the premises. This assertion is not what appellant agreed to when he entered into the lease. As previously discussed, the language of the lease states that in the event of default appellant's rights were terminated and respondent could repossess and relet the premises.

In sum, we find no reversible error and therefore affirm.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

-6-